I'll give counsel a chance to get set up. And Ballantyne Leppert, you have reserved four minutes for rebuttal. You may proceed. May it please the court, sitting in bank in Evans v. Stevens, this court laid out important principles when evaluating the evidence at summary judgment. Quote, when the non-movement has testified to events, we do not, as urged by plaintiff's counsel, pick and choose bits from other witnesses, essentially incompatible accounts, in effect declining to credit some of the non-movement's own testimony, and then string together those to form the story that we deem most helpful to the non-movement. Have we ever applied that principle of law to, in a published opinion, to a judgment as a matter of law? I've not seen it. Okay. Do you think there's a reason why? I don't see a distinction. Let me ask you maybe what I think some distinctions are. So I know you're a trial lawyer, right? I'm an appellate lawyer. You're an appellate lawyer, but you're in trial, right? I was there, yes. Okay. And you were in this trial? I was. Okay. You know that a trial, a jury is instructed regarding credibility of witnesses, that a jury is free to accept none, all, or some of a witness's testimony, correct? I don't think that's right, that they're allowed to draw unreasonable inferences. Well, we're not, that's not what I asked you, but you're probably right what you just said, but that's not what I asked you. A jury is instructed, you would agree with me, that they are entitled to accept as credibility all of a witness's testimony, in other words, I find that witness completely credible in everything she says, none, I find that witness to be the worst, dirtiest liar in the history of dirtiest liars, and I don't believe anything she said, or some of a witness's testimony. In other words, I believed her on this, but I think she was fibbing it a little bit on this. You agree with me? I don't have the instruction in front of me, but it sounds right. Okay. Oh, it's got to be right. I've been doing this business for almost 70 years, and I've never heard anything to the contrary. That's how I know I'm right, because he says it. As a matter of fact, that's how you argue to the jury, depending on what side you've got and what strong points you've got. So once we've established that baseline, my next question is this, is a reason why we as the, not the fact finder, but essentially judge and jury, cannot do that pick and choose testimony. We have to just accept it all in one person's favor, different from a jury, which can pick and choose what it wants to accept and reject. Oh, it's, I respectfully and strongly disagree, because Judge Karnes in evidence concurred specifically. I know that opinion real well. I know, I suspect, and he explained the reason for the rule that I just articulated, and it is, absent some extraordinary circumstance, no reasonable jury would believe that a party was lying when he has said something harmful to his own case. And at summary judgment, this court, or a district court, is required to assess what could a reasonable jury find, not an irrational jury, not an irrational jury, but what could a reasonable jury find under the circumstances. That part of the analysis does not change from one to the other. Let's back up a little bit. So let me accept that you're right on Evans. We don't have a ton of time, so I'm going to accept your premise, even though I'm troubled by it. And I'm troubled by the fact that it hasn't been applied to any other judgment as a matter of law case. But let me accept it for right now. That goes to what your argument regarding actual knowledge. So I accept that your client testified regarding actual knowledge, sorry, their client testified, I apologize. Your opposing counsel's client testified actual knowledge. That gets you to the knowledge part. But there's another component of the statute of limitations, and that's injury, is it not? Yes. In other words, to ripen a claim, there actually has to be an injury. Got it. Okay. You have to comprehend the cause of action. That's the, in simple terms, that's an easy way to put it, yeah. Right. But there actually has to be an injury. Right. Okay. So here, as I understand the testimony, and correct me if I'm wrong, there is testimony that the symptoms, which are the injuries here, that Ms. Redding was undergoing in 2009 after that original operation were asymptomatic to anything to do with exposure or erosion. And I know there was contrary evidence to that. But if there's medical testimony, both from an expert and her treating physician, that that was asymptomatic, can't a jury determine that there was no injury to her in 2009, and the injury only manifested itself in 2014? Can't separate that from the point we already did. You assumed it might. I am. I'm assuming it. Yeah. But then I win. Tell me why. Because we cannot, under that circumstance, ignore her testimony that in 2009- John Cook, you lost me. I don't buy any of that. You've got to take all of the evidence before the jury and then make your point that she knew about the cause of action at an earlier time. And I can give you that evidence in spades. Not whether or not what she says is believable or not believable or whole or in part doesn't really matter, does it? Correct. But here's the point. She testified to a jury under oath. I read it. Okay. So therefore, she had everything that you just said. She had the facts giving rise to the lawsuit. In fact, she brought- She has to have a comprehension of the cause of action. Exactly. And she did. She had everything that you would need to bring a lawsuit. How do we know that? Because in 2014, when she goes to the doctor and she ultimately brings the lawsuit, she has the exact same presentation, the exact same knowledge. She's given- In 2010, she is under the post-surgery, she is under the care of a physician who is not diagnosing this problem. So yes, I would agree. She knew she had a medical condition that prompted the surgery. Her symptoms of that medical condition persisted after surgery. She had post-surgical complications. I think everybody would agree with that. But there are post-surgical issues that arise, infections, wounds that need to heal. How is her- And she has no doctor's diagnosis that this is the problem in 2009, 2010. How do you overcome that? I respectfully disagree with your characterization of the record. She testified under oath, on direct and on cross, that she was diagnosed with an erosion of the mesh and that the erosion had become infected. That is, in fact, to your point, the exact same injury for which you brought the lawsuit. How do you reconcile that with the doctor's testimony? The doctor said, I don't remember her. I can only go- Oh, I know that. Oh, but he was refreshing his recollection, his past recollection recorded in his records. That brings us to- He was answering the questions. That brings us to the issue that we started with. If she testifies, I was told I have an erosion of the mesh and it's infected and it's causing my problems. She testified to that under oath. She cannot now rely on a third-party witness and a third-party document to create a conflict in the evidence. That's the point of Evans. That's the point of Jones. I'm sorry. What about the fact that she did have a small, the doctor did diagnose her, he said, I can see a small centimeter piece of mesh, but that when she is going in later in 2014, it appears that that mesh that was the subject of the earlier problems had healed, as the doctor predicted, that she has mesh erosion in a different location. I don't understand why that's not determinative. Under Florida law, there's a first injury rule. You don't get a separate statute of limitations every time there's another erosion. The first injury rule means the first invasion of the legal rights from the same conduct triggers the statute of limitations. Even if this is to be expected in some of these mesh surgeries, even if that little bit of seeing the mesh is expected, but then it heals. But we have way more than that. We have way more than that. If that's what it is, I wouldn't be standing here. We're saying, she said in 2009, 2010, it was hurting so bad, I couldn't sit anymore. I went to the doctor. I told the doctor this. He told me you have an erosion of the mesh and it's become infected. That's what's creating the infection. That's what's creating the order. She couldn't sit anymore and she said it was hurting so bad. And then we ask her, before you brought this lawsuit and you saw it, the second doctor, what was it at that point in time? She says at page 563, those were the same complaints and she describes them with the same level of detail. Those were, the counsel, there was contrary evidence, medical evidence, that in fact the erosion was completely unrelated to any infection and that the, whatever the tiny millimeter erosion that there was from the 2009 surgery was asymptomatic of anything she was feeling. Right? Just repeat the last sentence for me. That the tiny bit of erosion was asymptomatic for anything else that she was feeling. Again. There's medical evidence of that. Do you agree with me? The doctors testified exactly to that. You're right. Okay. I'm pretty good about that. You're right. Okay. So if the jury heard one and the jury heard the other, why can't the jury- Brings us back to the Evans issue. If- Can I ask something? Why couldn't the jury have completely disregarded all of her testimony and still have found for her? Because she recovered $2.5 million based on the exact same testimony. That's the problem. She testified about, excuse me, she testified about her pain. Counsel, counsel, counsel. I know. I'm going to give you the time. Don't worry. I'm going to give you the time. She had experts who went through all of her medical issues and discussed all of the problems that she was talking about, independent of anything she said. Why couldn't a jury rest its verdict on that? Because when a person testifies about her own pain and her own knowledge of things, the non-movement testifies about those events, her own pain and her own knowledge. That is dispositive. She cannot now create a question of fact, a conflict in the evidence, by relying on more favorable testimony from third parties. That doesn't answer, really answer my question. In other words, your view is under Evans, it either has to be all or nothing. And I'm telling you, let's assume the jury said nothing. Couldn't the jury still have reached the verdict it did? No, because they had to credit her testimony as to the onset of her pain. Why did they have to credit her testimony? Because she had to testify about pain. I understand, but I'm just asking, why did they have to credit anybody's testimony? If it was conflicting with the expert witness' testimony, could the jury take that into account? Not under Evans. Not under Evans. It's her own pain and her knowledge of things. I understand that. I understand that. I wouldn't be standing here if . . . I understand what you're talking about. You have a good argument. The point I'm making is, whether or not it's in granite, her testimony. Just the last part. Whether her testimony is in effect in granite. In granite. Granite, in stone. That's all you need is her testimony and the rest of the testimony is irrelevant. As to admissions . . . That really is your point, is it? It is. As to admissions regarding her own pain and her own . . . I understand that. It is that. Your case rests on her testimony. Exactly. All right. All the rest of the evidence is almost irrelevant, other than she had the surgery and so forth. What we need to . . . What we cannot consider is other evidence that contradicts her own story. She has the symptoms and somebody told her what the problem was. Correct. Okay. That triggers the statute of limitations. Because all that's required under Florida law is some evidence of a causal connection to the problem. Well, you've got to have some appreciation that there's a cause of action. The Florida Supreme Court defined that in Brown and Williamson v. Carter in a product liability case as some evidence of a causal connection to the product. That's easily established by way of a diagnosis of mesh erosion, which is very similar than a diagnosis of asbestosis. It already has the product in it, but we have more here. She understood the link. She told us under oath she understood the link. I'm saying I'm running into my rebuttal, I think. Is there anything that you have not said that you want to say? No, I said I really apologize for talking over you, Your Honor. Thank you. You do have four minutes still for rebuttal. Mr. Davis. Thank you. Good morning, Your Honors, and may it please the Court. I am Adam Davis. I am here representing the Appellee, Virginia Redding. With me at table is Karen Fritz. What's the best argument they have? That they have? Yeah, what's the best argument they have? Then you can tear it up. What is the best argument they have? Well, it seems the only argument that they have made today is that you have to believe everything Ms. Redding said. And that if you believe... It's on her testimony. And that if you believe everything Ms. Redding said, then that naturally means that as a matter of law, she both had an injury within the statutory period, and she knew or reasonably should have known that she had an injury. And both of those conclusions are incorrect. First of all... Counsel, I want to break it down a little bit to tell you how I'm viewing the case. And then you can tell me I have it right, I have it wrong, or within that framework, discuss why you win, okay? So it seems to me that the statute, the accrual statute, sort of separates two things. One is the reason to know, and one is actually new or knowledge. You agree with that? I agree with that part as to the discovery rule, but there's a whole other issue that there has to be a complete claim, which I think... So we're going to get there, and that may be where this rests. But a lot of your briefing is arguing this first part, and not enough on that second part. But we'll get to there. So at least with regard to knowledge, there's actual knowledge and reason to know. Right. And it seems to me that our... And I agree we're bound by it. I'm not going to get too much into the discussion of it. We're bound by the case, as far as I'm concerned. The Egg Nahem case seems to set the test out for the reason to know. Do you agree with me on that? Correct. Okay. And I'll also say this. My view is that I don't see how, on the reason to know, and this goes to Judge Branch's question, that there seems to be undisputed evidence that these symptoms came from, or evidence from which the jury could conclude, that these symptoms were symptoms that you were likely to feel from surgery anyway and not independent of the claim, and not independent based on just the erosion. In other words, it wasn't something that you had surgery and you had this major thing that is completely out of nowhere that would then trigger a reason to know. That's my view of it. Correct. The only diagnosis, which are both 13 days after surgery, are a tiny erosion and a possible infection. Both of these are known complications of surgery. Okay. And that's based on her own testimony as well. Yes. She says, I knew I could be infected and I knew there was going to be some erosion. They told me about it. That's right. Okay. The real dispute here seems to be on the actual knowledge part because she testifies, and I know it came as probably a bit of a surprise to you, you can tell based on the transcript, she testifies that I understood that my symptoms were based on the surgery, that it was based on this mesh. And I was injured as a result of that. I mean, I'm paraphrasing, but that's essentially what she says. And that seems to me to go to the actual knowledge. Am I wrong on that? I agree that that goes to the actual knowledge. Now, I think that her testimony is slightly different from that in important ways in the sense that she's asked about the product and she says, I thought there was something wrong with it. And that's extremely ambiguous as to whether she's saying something wrong with the product, whether there's something wrong with the situation, whether there's something wrong with the surgery. The follow-up, though, I'm not so sure that's... I know that's what Eghayem says in relation to when the question that was asked there, they said, well, it could have been surgery or other things. The question that's asked here is, did you believe that the products that had been implanted in you were unsafe? Not the surgery, but the product itself. And she says, I thought something was wrong with it. Something was wrong. I don't know something was wrong. And then the follow-up question is a lot more sure than that. It says, but at the time, you knew something was wrong. She says, yes. Not I thought. She does, but in that question, the product isn't mentioned. You knew something was wrong. I know, but counsel, you have to take the question in context. I mean, just like we read statutes in context, we read testimony in context, too. Certainly, we read it in favor of the jury's verdict here. Well, I think context is important, but in a different way. The jury and ultimately the judge, which is deciding whether the jury was reasonable or not, they're in the room. They can see the mannerisms. Sometimes people say things that if you print it out on a literal transcript is not exactly what they mean. I've thought about as a parent that sometimes I might say there's something wrong with my child. I don't mean that there's literally a defect, but something's going on in their life that is causing them distress. I know, but that can be interpreted. Sorry, Judge. What she might have believed is irrelevant, isn't it? I'm not making your argument. I'm just saying, to me, what she believed or deduced or some such thing has very low probative value. Well, I think what she believed matters. To go back to Judge Luck's question . . . She can be testifying as to pain or suffering or something of that sort, but whether she believes it comes from here or there or someplace else, in my view, is very weak in terms of probative value, in terms of proof. If I understand your question . . . As to cause. Yes, that's right, Your Honor. Do you understand what I mean? Yes, I do understand you. So this belief stuff is good for jury argument, but it doesn't have any punch. First place, she's not an expert. So she's giving a layman's testimony as to what she believes is the cause. I would say that's correct, and I think it's even ambiguous. And I don't know what a judge does with that. It should have been an objection and would have been sustained, I suppose. Well, there was an objection to the next question, but that seems to be unruled on. So I want to harp back on this. So if we agree . . . Let me put it this way. I have to tell you that I read that to be at least some evidence that the jury could conclude of she knew, based on that the product implanted in her was unsafe. That's how I read that exchange. And I don't know that it could be read reasonably any other way than that. So my next question is, what contrary evidence was there about her belief? Well, for one thing, she testified that she thought the jury might be rejecting her mesh. I mean, sorry, not the jury, but her body might be rejecting her mesh. That was important in, I believe, it was the Perryman-Mentor case, because that would be something not attributable to any problem with the mesh, but rather a problem with her body. So just in terms of her mindset, that's one thing. And I think even all of the records as to what she's not reporting are important to what her belief is at the time, because she's testifying without medical records being shown to her 12 years after that happened. And so ultimately, the medical records are showing what she was or was not reporting to the physician. And the fact that she's not reporting pain to the physician, or that she's not reporting anything, she does report this discomfort withstanding, but she's not attributing it to the mesh, she's not saying what part of her body, there's nothing in what she is reporting to the physician that suggests that she thinks there's a problem with the mesh itself. So I think that is the contrary evidence, and then of course we have all of this medical evidence that is contrary. So the problem is the medical evidence doesn't necessarily dispute her belief. It goes to the fact, and we'll talk about the fact in a second. So as I understand it, there's two things that you think were about her testimony. One is her later statement that she thought that her body was rejecting the mesh, and the fact that the medical records, which arguably reflected what she was telling her doctor, didn't show this belief in there. That's correct. And I would also say I think her testimony is ambiguous, but I understand you asked me to accept it. Okay. All right. And I'm not treating that as a concession in any way. Okay. Let's get past that for a moment. I think that there's evidence of knowledge here, and that it's generally unrebutted. In other words, the jury is going to accept that evidence. The jury would have to accept that evidence because there's no other evidence contrary that it could be rebutted other than rejecting her entire testimony. Is there another problem with the statute of limitations, or is there another element here that is in dispute or problematic for which a jury could find that the statute of limitations started to run in 2014 as opposed to in 2019? Yes. The other issue that we have raised is that there isn't a complete cause of action. Because? Because no physician has testified in any way that connects the MeSH causally to any symptom she was suffering in 2009 or 2010. Is that another way? I'm trying to phrase that. Is that another way of saying, essentially, she wasn't actually injured by the MeSH until 2014? Right. I think it's important to make a distinction between a symptom and an injury. Right. And an injury has a legal definition that includes a causal element. And if you imagine her filing a case as a plaintiff in 2010 and trying to say, I was injured by this. Believe my testimony. But there's- One question is, if you had a jury at a trial, that's all that the evidence was. Then the question would be whether or not there's anything. Yes. Honestly, I think that she would have been subject to judgment as a matter of law if she had filed a case as a plaintiff in 2010. And Coloplast would have been arguing that and would have been arguing it correctly. Because the law is very clear that for medical causation, you have to have expert support for your case. And there is simply none here. Not only is there no expert support, but there is directly contradictory testimony from the experts, as your honors have pointed out in the prior questioning. Well, it can't be that a cause of action accrues when an expert says so. It has to be when it happens, right? Yes. That's correct. I'm not saying that she would have needed to get an expert to file a case. I'm just saying the information wasn't there. So what evidence is there that an injury did not happen as a result of this product in 2019? 2009. 2009. Well, first of all, there's constant testimony that the tiny erosion was asymptomatic. And there's this idea in the case that's in the briefing that a physician diagnosed her with a condition that was related to the mesh. That never happened. The only diagnosis of any kind is this tiny erosion, which, as an aside, several experts testify, well, is really an exposure, not an erosion. But be that as it may, that is constantly described as asymptomatic. There is no treatment that the doctor feels is necessary. He says it wasn't causing any problems. And the way he described it makes it clear that he believed it was a surgical complication. This is a direct quote. It was a tiny little fragment of mesh that comes through the surgical incision. So what do we do with her testimony where she says that she felt the same pain from 2009 all the way to 2014? Well, first of all, again, I would point out. Am I misdescribing her testimony? I'm sorry? Am I misdescribing her testimony? On cross-examination, she did agree with that, just sort of generally stated. It wasn't broken down. No medical records were shown. It is completely contradicted by the record. And I think, especially given that she testified herself that her memory is incomplete and that the medical records are a better judge of reality than her testimony on the stand, she said that on the stand, I think the jury was certainly able to look at that contrary testimony, which was the complications in 2014 are post-menopausal bleeding didn't exist before. Pelvic pain didn't exist before. Vulvovaginal atrophy, if I said that right, didn't exist before. That's a little later than 2014. Dyspareunia comes a little later. And then the other one is two new erosions. And as I believe was Judge Branch mentioned earlier, these erosions are in different locations. They're larger. They are completely different symptoms. So everything is different based on the medical records and the medical testimony. So this isn't a first injury case where an injury happens and then just worsens over time. There's no injury in 2009 and 2010. And then there is an injury in 2014. Some of the symptoms she was experiencing post-surgery were similar to symptoms she had experienced before surgery, correct? There is some similarity. I mean, certainly it's the same area of the body. And she does have erosions, which to her may feel similar because they're causing pain, although they were much worse the second time. They caused bleeding. But that still doesn't mean that they're the same injury just because she has certain subjective feelings. So she says that she was told that the erosion was at least related to some of her symptoms, maybe not all of them. But at least the infection part, which is what she says. Yes. What do we do with this concept of Evans that we, I mean, because you clearly rely on her testimony to some extent regarding pain and suffering and other things. I mean, there's no doubt about that. And the jury clearly accepted that testimony because it awarded a very hefty verdict for her. So do we not then need to take it in all wholesale or not when it comes to the plaintiff's testimony as opposed to Joe Schmoe witness or expert witness? Two things, Your Honor. First of all, I think the jury is entitled to look at her testimony and decide which of her testimony is consistent with the medical records, which of it is not. Again, as we've discussed, they can look at her demeanor. And they have full ability to determine what to believe in that. That makes a lot of sense to me. I don't dispute that as a matter of logic. If you just told me what's the law, I would have answered very similar to that. But what do you make of this line of cases we have which essentially suggests that when it comes to a plaintiff's testimony, that they have every incentive to give the best testimony possible. And it wouldn't make sense for a jury to accept the really good stuff and then reject the really bad stuff for that particular witness. Well, Your Honor, first of all, I think that as you mentioned in prior questioning, those arose in very different circumstances. There were filings to the court for a judge-determined issue of qualified immunity. And here it's a question of whether a jury can accept a plaintiff's testimony on particular issues when there are other medical records that show something that is contrary. And so I think that's the biggest point is that, but I also think it's important that again, I see him over time, may I finish the answer? Yes. Okay, so the Sixth Circuit case that we quoted in Parton, which goes directly to the is she injured because it was a statute of repose case. That's an unpublished case, right? It is, it is. What they say, and I think this is right, is that a plaintiff slash patient is qualified to testify about their symptoms, but not about what caused them. And so even if you were to accept everything about her testimony and her symptoms, then there's still that missing piece on causation, both on the question of was she injured and on the question of the statute of limitations discovery rule. And one final point on the discovery rule, there is a line of. Let me ask you a question. You have exceeded your time, so I'm gonna take up a little bit of it. But so you're suggesting though that if she had provided this testimony at trial and the medical records were silent, did not contradict her, we wouldn't be here today. I'm not suggesting that, I don't think. Are you hanging your hat on the contradictory medical records? Not entirely, because I'm hanging my hat on the idea that there is no evidence of causation and that she can't provide it. And the other thing I'm hanging my. Go ahead. The other thing I'm hanging my hat on is there's this whole line of cases, and I won't go into the details as I'm over time, but there's the Carter case, there's the Babush case from Florida, there's the two cases preceding this from this court, and they all support the idea that where there are two possible explanations as to the injuries, the statute of limitations has not run as a matter of law. And again, I want to emphasize it's a matter of law issue. And so that's, her testimony provides one possible explanation, but at least when we include the medical records, there is a second possible explanation. May I ask a question? Yes. You have a question first, seems to me, whether she's on notice that she needs to make some kind of inquiry. Part of the law is whether she should have known something's wrong, which means seek out some explanation somewhere, some cause. I agree that that, oh, I'm sorry. Take a hypothetical case. Yeah. Somebody really feels very, very bad and has a pretty good idea of what the cause is, has some idea, but can't be an expert and can't really say. But a jury can find they should go to ask somebody. And then the testimony is, if that had happened, they would have been told that here's the cause. So the question I have is whether there's any time in the, during that period after 2010, for example, when what she said, what the evidence is, would put her in some obligation to inquire. I would say no, Your Honor. Meaning to tell the doctor. Right. Well, I mean, certainly her testimony is that she did tell the doctor, but regardless, the fact that her doctor is telling her that there are no issues here is a reason that she doesn't have reason to inquiry. And then getting into the law again, that inquiry notice. In other words, she doesn't have to go any further. Right, right. Given Dr. Weaver's statements of 2010. Right, given that he's not concerned about what's happening. She's doing the reasonable inquiry by going to her doctor. That Seventh Circuit start case we cited goes into that. But this also goes back to the point of. We're actually now past time, so. Okay, all right. Thank you, Your Honor. All right, Mr. Leppert, you have four minutes left. Thank you, Your Honor. Dr. Weaver, according to the plaintiff's own testimony, told her that the mesh is eroded and is causing her infection. We're not relying on her lay opinion. We're relying on the doctor having told her that. That is some evidence of a causal connection to the product. That's all that's required, and you're right when you're talking about inquiry notice. She was easily put on that inquiry notice, and she had above that when a doctor tells her in response to her reporting, I'm hurting so bad. She describes the pain to him. He examines the mesh. He says, it has eroded, and that's what's causing your infection, your odor. She has everything like that. You take the Fourth District Court opinion in Barbush, which has been cited in some of the other opinions on the statute of limitations. They said the statute accrued when the plaintiff had a conversation with his neighbor who happens to be a pharmacist and told him there may be a connection between the drug and the liver disease that you have. That was sufficient notice. He or she had a conversation with the doctor about the cause, and when we're talking about the question of fact here, the question issue, we keep saying, well, the medical record's contradicted. Well, do they really? The medical records are merely silent. So we have an issue here that her reporting the pain, which she testified to that she did report it, is not reflected in the medical records. The medical records don't say asymptomatic. It's simply, it's that the witnesses believe that they don't remember what was happening, so they looked at the medical records, and I don't see it, and based on that, they say that she's asymptomatic. But the statute of limitations turns on what she knew, what she thought, and we're not using her testimony to establish causation with all the reasons that have already been pointed out. What about the injury part of it? Yes, so on the injury part, she says, I was hurting so bad, and that is a compensable injury. A non-frivolous lawsuit could have been filed. A tiny erosion can cause big problems. There, there does seem to be inconsistent testimony between the medical records and there. It's not silence, in other words. We have affirmative testimony from which a jury could conclude that one, that the tiny erosion did not cause any of the symptoms that she had, any of the injuries that she manifested. So, there is a pre-limitations period record that describes drainage and odor, which is consistent with what she testified to, and it's consistent with an infection. So, there is that. There's also discomfort while standing in the medical record, pre-limitations period. I'm talking about pre-limitations period. But the doctors, there's evidence in the record from both the treating physician at the time and from the expert who say that those were asymptomatic of the mesh. Fair enough, but she testifies that, not that she, her own belief, but she was, what was communicated to her from the doctor was it's the mesh that's eroded. So, we get back to the Evans issue. I agree, it's a conflict, but isn't that what a jury is able to decide? That's the Evans issue. So, it really comes down to evidence. It's the Evans issue, and on that one, just if I may wrap up on that point. You have a minute. Your Honor asked me a very good question. Do you have a case, a judgment as a matter of law? I said, no, I don't. What has he cited? What has he cited for the proposition that you can go to court, right, and that a jury can take the story of the plaintiff as to her pain and her knowledge and disregard that in light of a third-party witness testimony as to her pain and override what the plaintiff said about her pain? What have they cited in that context? Have they cited anything that says, well, we apply Evans, Jones, and Valderrama at summary judgment, but if we get past summary judgment, all of a sudden, the same testimony can be viewed differently. All of a sudden, that same assessment as to what, according to Judge Carnes, a reasonable jury could or could not consider changes because we've gone there. Has he cited anything for that proposition? It seems to me the inquiry is the same because the test at summary judgment is what could a reasonable jury decide and what could it not decide. With that in mind, I again apologize for talking over the court, and I ask the court to reverse and remand for judgment as a matter of law. Thank you. Thank you both. We have your case under advisement. And we are now gonna turn to our fourth and final case, which.